**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| GERALD MINOGUE, ADMINISTRATOR OF THE ESTATE OF JULIE MINOGUE, LUKE MINOGUE PPA SANDRA DOEPPER, SHAUN TURNER, AND NICHOLAS TURNER,<br><br>    Plaintiffs,<br><br>    v.<br><br>LYFT DRIVES CONNECTICUT, INC. AND LYFT, INC.<br>    Defendants. | )<br>)<br>)<br>)   Case No.:<br>)   3:25-cv-<br>)   00007-VAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT LYFT, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Lyft, Inc., d/b/a Lyft Drives Connecticut, Inc. ("Lyft"), files this Reply in Support of its Motion to Dismiss the Complaint [ECF No. 16] ("Motion"), and in response to Plaintiffs' Objection to the Motion, [ECF No. 28] ("Objection").

**INTRODUCTION**

In the Objection, Plaintiffs acknowledge, as they must, that the "black-letter rule" in Connecticut is that "Lyft [didn't owe] a duty of care to protect [the Decedent] from the harm she endured at the hands of a third-party criminal." Obj. at 5 (alterations in original). But Plaintiffs argue that two exceptions to this rule apply here to extend liability to Lyft for Decedent's murder at the hands of a third-party, Ewen Dewitt ("Dewitt"): (1) that Lyft voluntarily assumed a duty to protect Decedent; and (2) that there was a special relationship between Lyft and Dewitt. Plaintiffs' arguments fail for multiple independent reasons.

*First*, neither of the theories that Plaintiffs rely on are pleaded in the Complaint, which forecloses them at the threshold.

{W3669950}

*Second*, even if Plaintiffs had attempted to plead a voluntary assumption of duty by Lyft, that claim would fail as a matter of law because it requires a plaintiff to allege (1) that Lyft "undert[ook] . . . to render services to another which he should recognize as necessary for the protection of a third person"; and (2) that Lyft's undertaking increased the risk of harm to the Decedent or the harm occurred because of Decedent's reliance on the undertaking. *Demond v. Project Serv., LLC*, 331 Conn. 816, 821 n.1 (2019) (citing Section 324A of the Restatement (Second) of Torts). Plaintiffs have not, and cannot, allege any of these elements.

*Third*, Plaintiffs cannot satisfy the special relationship exception to the no-duty rule as a matter of law because they do not, and cannot, allege that Lyft controlled Dewitt, which is required for the special relationship exception to apply. Plaintiffs argue that Lyft was a "common carrier," but that argument is both unpled and unavailing—as explained in the Motion, the common carrier duty runs only to passengers during a ride, not to third parties injured by former passengers after the ride concludes. *See* Mot. at 6.

*Fourth*, Plaintiffs attempt to circumvent the clear inapplicability of either of the foregoing exceptions to the no-duty rule by arguing that their cursory allegations that Lyft negligently trained and supervised the John Doe driver who transported Dewitt give rise to an independent source of duty. *See* Obj. at 11-12. But this is circular—for such a theory to survive dismissal, Plaintiffs must first allege a cognizable duty owed by Lyft to the Decedent, which Plaintiffs failed to do for the reasons stated above. Plaintiffs' negligent training and supervision theory also fails for the multiple independent reasons set out in the Motion, which the Objection ignores.

*Finally*, the Objection also ignores the arguments in the Motion directed to Plaintiff's wrongful death claim, conceding those arguments and abandoning that claim.

The Court should grant the Motion and dismiss the Complaint with prejudice.

**ARGUMENT**

**I.    Plaintiffs Do Not Plead Any Exception to the No-Duty Rule in the Complaint.**

Plaintiffs acknowledge that their claims fail absent the applicability of an exception to the well-established rule that "there is no duty to protect a third person from the conduct of another." *Fraser v. United States*, 236 Conn. 625, 632 (1996); *see* Obj. at 5. In the Objection, Plaintiffs argue, for the first time, that two exceptions to this general rule apply here, namely that: (1) Lyft assumed a duty to protect Decedent from Dewitt's criminal attack; and (2) Lyft had a special relationship with Dewitt. Obj. at 5-11.

In addition to being substantively meritless for the reasons explained in Section II below, both of these theories fail at the threshold because they were not pleaded in the Complaint. Such exceptions must be explicitly pled, and the Complaint makes no reference to any assumption of duty by Lyft or any special relationship among the parties. *See, e.g.*, *Remillard v. Rancourt Enters., Inc.*, No. CV156061566S, 2016 WL 6128127, at *4 (Conn. Super. Ct. Sept. 21, 2016) (striking voluntary assumption of duty theory where the elements of that claim were not pleaded sufficient to satisfy Section 324A of the Restatement (Second) of Torts); *Errato v. Am. Express Co.*, 646 F. Supp. 3d 402, 409 (D. Conn. 2022) (Bolden, J.) (dismissing negligence claim for failure to plead "an exception to th[e] general rule" that there "is no duty that obligates on party to aid or to protect another party") (quoting *Ryan Transportation, Inc. v. M & G Assocs.*, 266 Conn. 520, 529 (2003)).

Put simply, in responding to a motion to dismiss, a plaintiff "cannot 'speculate about unpleaded facts.'" *Cora v. Gardner*, No. 3:24-CV-1450-VAB, 2025 WL 744272, at *9 (D. Conn. Mar. 7, 2025) (quoting *Darby v. Greenman*, 14 F.4th 124, 130 n.6 (2d Cir. 2021)). For this reason, Plaintiff's repeated refrain that "dismissal now, without some discovery, is premature"; Obj. at 11; is a non-starter, as that argument would turn the pleading rules on their head and render Rule 12(b)(6) a dead letter. *See, e.g.*, *Kaufman v. All Seasons Marine Works, Inc.*, No. 3:11-CV-1874-

VLB, 2012 WL 4928862, at *7 (D. Conn. Oct. 16, 2012) ("[D]iscovery is unwarranted where it would function as a fishing expedition for evidence in search of a theory that has yet to be asserted." (quoting *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n. 6 (S.D.N.Y. 2009)), *aff'd*, 554 F. App'x 71 (2d Cir. 2014); *see also* Lyft's Obj. to Pls.' Mot. to Stay Adjudication, [ECF No. 27]. The Motion should be granted for this reason alone.

## II. Even Considering the Unpleaded Exceptions to the No-Duty Rule Asserted in the Objection, Those Theories Fail as a Matter of Law.

### A. *Lyft Did Not Voluntarily Assume a Duty to Protect Decedent.*

Plaintiffs' unpleaded assumption of duty theory is that because "presumably . . . Lyft has regulations and policies for their drivers, including instructions on how to handle a passenger with an exposed weapon," Lyft assumed a duty "to provide for the safety of, not only, the passenger, and the driver, but also intended, foreseeable victims generally, like the Decedent." Obj. at 7. Even if this theory had been pleaded, it would fail as a matter of law for multiple independent reasons.

The elements necessary to plead an assumption of duty are set out in Section 324A of the Restatement (Second) of Torts ("Section 324A"). Section 324A requires Plaintiff to plead, at a minimum, (1) that Lyft "undert[ook] to render services to another which he should recognize as necessary for the protection of a third person"; and (2) that the undertaking increased the risk of harm to the Decedent, or the harm occurred because of Decedent's reliance on the undertaking. *Demond*, 331 Conn. at 821 n.1 (citing Section 324A). Failure to establish those elements precludes a voluntary assumption of duty theory. *Id.* Neither of the elements of Section 324A are met here.

*First*, Plaintiffs fail to identify any services that Lyft undertook to perform which Lyft "should recognize as necessary for the protection of a third person." *Id.* The only services Plaintiffs allege that Lyft performed were "operating mobile ride transportation services" that allowed Dewitt to connect with the John Doe driver on the Lyft digital platform. *See, e.g.*, Compl. ¶ 9. Such

services are indisputably not "for the protection of a third person"—Lyft is a Transportation Network Company ("TNC"), which is defined by Connecticut's TNC Statute as a company "that operates in this state and uses a digital network to connect transportation network company riders to transportation network company drivers to provide prearranged rides." General Statutes § 13b-116; *see* Mot. at 6 n.2. Performing statutorily-defined TNC services cannot, as a matter of law, be considered gratuitous undertakings to provide services aimed at protecting third parties—were it otherwise, every TNC operating in Connecticut (such as Uber and Lyft) would be gratuitously assuming heightened duties just by conducting business pursuant to the TNC Statute. *See, e.g.*, *Mantie v. Inn at Manchester, Inc.*, No. CV 950058009S, 1997 WL 16845, at *10 (Conn. Super. Ct. Jan. 9, 1997) (striking voluntary assumption of duty claim based on defendant's routine, for-profit business operations, rather than services undertaken to protect a third party).

To the extent Plaintiffs argue that Lyft has internal policies prohibiting weapons in vehicles and that "[f]ailure to follow their own guidelines amounts to an assumption and breach of that duty"; Obj. at 7; such guidelines are not undertakings "to render services" and they cannot, without more, give rise to a duty of care. *See, e.g.*, *Demond*, 331 Conn. at 849 (an "alleged contravention of internal policy" does not "impos[e] [a] duty to third persons") (citation omitted); *de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1311 (2d Cir. 2002) ("As a policy matter, it makes no sense to discourage the adoption of higher standards than the law requires by treating them as predicates for liability. Courts therefore have sensibly declined to infer legal duties from internal 'house rules' or . . . internal policies and procedures." (alterations and citations omitted)).

*Second*, even if Plaintiffs could identify any *services* Lyft undertook to protect third persons (they cannot), Plaintiffs fail to satisfy the second prong of Section 324A because they fail to argue—let alone plead—that Decedent relied on any undertaking by Lyft or that any undertaking

increased the risk of harm to the Decedent. *See Demond*, 331 Conn. at 858 (rejecting assumption of duty as a matter of law where plaintiffs "have not established that the defendants increased the risk of harm to them within the meaning of [Section 324A], or that the plaintiffs . . . relied on the undertaking for the purposes of [Section 324A]"). For example, Plaintiffs do not allege that the Decedent was even aware of any internal Lyft "guidelines" regarding weapons, much less that she relied on such guidelines for her safety, and do not claim that Lyft's guidelines increased the risk of Decedent being attacked by Dewitt to a greater degree than if Lyft had no such guidelines at all. *See id.* ("[A] plaintiff must establish that the [undertaking] party increased the risk of harm over the level of risk that would have existed if there had been no undertaking at all"); *Mantie*, 1997 WL 16845, at *6 (finding no assumption of duty "where the plaintiff does not claim that she relied upon or was even familiar with the obligation claimed to have been assumed by the defendant").

For these reasons, even if the Court were to consider Plaintiffs' unpleaded assumption of duty theory—which it should not and despite the absence of any such theory from the Complaint—this theory fails as a matter of law.

### B.    Lyft Had No Special Relationship with Dewitt or Decedent.

In the Objection, Plaintiffs rely on two relationships to attempt to satisfy the "special relationship" exception to the no-duty role: (1) the purported "agency" relationship between Lyft and the John Doe driver that transported Dewitt; and (2) Lyft's purported "common carrier" relationship with Dewitt. Neither of these satisfy the "special relationship" exception, which requires that the defendant either had control over the third party that caused the harm (here, Dewitt) or custody over the person harmed by the third party (here, Decedent). *See, e.g.*, *Ryan*, 266 Conn. at 529 (rejecting the imposition of a duty to prevent a third party criminal attack because "there did not exist a relationship involving . . . custody of or control"); Mot. at 4-8.

*First*, Plaintiffs' argument that the John Doe driver was purportedly Lyft's "agent, servant, or employee"; Obj. at 2; is a non-sequitur. Although such an allegation might be sufficient for a *vicarious liability* claim to survive dismissal, no such claim appears in the Complaint because a vicarious liability claim only lies where the agent is the alleged source of harm to the plaintiff. *See, e.g.*, *Alvarez v. New Haven Reg., Inc.*, 249 Conn. 709, 720 (1999).[1] Dewitt—not the John Doe driver—was the sole source of harm to the Decedent, and the "special relationship" exception to the no duty rule focuses on whether Lyft controlled *Dewitt*, not on whether Lyft controlled the John Doe driver. *See, e.g.*, *Kaminski v. Town of Fairfield*, 216 Conn. 29, 31-32 (1990) (affirming granting of motion to strike for lack of duty where parents were not alleged to have exercised "control" over their son who "attacked and struck [a police officer] with an axe"); *Ryan Transp., Inc.*, 266 Conn. at 526 n.7 (the defendant must have "control over a tortfeasor [to] give rise to a duty to protect third parties from harm caused by *the tortfeasor*." (emphasis added)). Plaintiffs' reliance on the alleged relationship between Lyft and the John Doe driver thus does nothing to give rise to any duty to protect Decedent from Dewitt.

*Second*, Plaintiffs' reliance on a purported "common carrier" relationship between Lyft and Dewitt similarly misses the mark for several independent reasons. As an initial matter, the Complaint nowhere pleads that Lyft is a common carrier. *See* Mot. at 6. Nor could it—as noted above, Lyft is a TNC. *See* Connecticut General Statutes § 13b-116. More importantly, as explained in the Motion, the duty owed by common carriers is "*to its passengers*"—*i.e.*, to Dewitt—not to third parties that are harmed by former passengers. Mot. at 6 (quoting Section 314A of the

---

[1] The TNC Statute would also forecloses any vicarious liability claim. Under Connecticut law, a "transportation network company driver," such as the John Doe driver, is defined as "an individual who is *not an employee* of a transportation network company." General Statutes § 13b-116(2) (emphasis added). Because the John Doe driver was merely an independent contractor, Lyft is not vicariously liable for his alleged negligence. *See Pelletier v. Sordoni/Skanska Construction Co.*, 264 Conn. 509, 517 (2003) ("an employer is not liable for the negligence of its independent contractors" (citation omitted)).

Restatement (Second) of Torts); *see also McCarten v. Town of Manchester*, No. X04HHDCV095034624S, 2010 WL 5158252, at *3 (Conn. Super. Ct. Nov. 24, 2010) (granting motion to strike negligence claim "because Connecticut does not recognize a duty between a common carrier and a third party, non-passenger, who was injured by the criminal acts of another"); *Freni v. Uber Techs., Inc.*, 2023 WL 8613538 at *2 (Mass. App. Ct. 2023) ("Even if we were to categorize Uber . . . as [a] common carrier[], a common carrier does not owe nonpassengers, like the plaintiff, a duty to prevent harm caused by the criminal conduct of its passengers."). Plaintiffs even acknowledge this obvious mismatch of alleged duties in the Objection. *See* Obj. at 10-11 ("A common carrier . . . has a duty to use the utmost care . . . to guard *its passengers* . . . Defendants will assuredly argue that the Decedent was not a passenger." (emphasis added; citation omitted)). Moreover, as Lyft explained in the Motion, any duty owed by common carriers to their passengers extinguishes once the ride is over. *See* Mot. at 6; *McCarten*, 2010 WL 5158252, at *3 ("A carrier is under no duty to one who has left the vehicle and ceased to be a passenger."). Plaintiffs offer no response to these dispositive arguments.

If anything, Plaintiffs acknowledge that their "special relationship" theories are unsupported and unprecedented in asking the Court to "exten[d] . . . the doctrine to Decedent," *i.e.* to create a new source of liability. Obj. at 10-11. The Court should decline to do so, as there is no basis in fact or law to impose a duty on a TNC for Decedent's murder by Dewitt where it is undisputed that Lyft did not have control or custody over Decedent or Dewitt. Doing so could extend liability to a limitless number of potential defendants who failed to prevent Decedent's murder—such as municipalities or landowners if Dewitt walked on their roads or sidewalks to get to Decedent's house; the store where Dewitt allegedly "stop[ped] to buy liquor and other supplies" on his way to Decedent's house, Compl. ¶ 14(b); and any bystanders who saw Dewitt on his way

to Decedent's house but failed to stop him from murdering Decedent. The rule that there is no duty to prevent third party criminal attacks is designed precisely to avoid such limitless liability. The Court should grant the Motion for these additional reasons.

### III.    Plaintiffs Fail to Address the Clear Legal Deficiencies of their Negligent Training and Supervision Theory.

As a fallback theory, Plaintiffs argue that Lyft "unquestionably has a duty to protect the public, including Decedent, for [its] own negligence" and that Lyft's alleged "fail[ure] to properly train and supervise . . . drivers to prevent the tragedies like the one that occurred here" makes Lyft's supposed negligence "self-evident." Obj. at 6, 11-12. But Plaintiffs cannot circumvent the rule that there is no duty to prevent third party criminal attacks by merely couching a claim as a negligent training or supervision claim. *See, e.g.*, *Silk v. Gill*, No. CV054002254S, 2005 WL 2497769, at *4 (Conn. Super. Ct. Sept. 15, 2005) (striking negligent supervision claim under the rule that "absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another" (quoting *Fraser*, 236 Conn. at 633)). Such claims still require Plaintiffs to plead a cognizable duty and, for the reasons explained above in Section I and II, Plaintiffs have failed to do so, requiring dismissal of these theories at the threshold.

In addition, the Objection fails to respond to any of the dispositive arguments raised in the Motion as to why the negligent training and supervision theory fails as a matter of law.

*First*, Plaintiffs fail to respond to Lyft's argument that a negligent training or supervision theory is only applicable where it is the purported employee of the defendant that engaged in the "conduct which caused injury." *Karlen v. Uber Techs., Inc.*, No. 3:21-CV-835-VAB, 2023 WL 3570635, at *2-3 (D. Conn. May 19, 2023). Plaintiffs' acknowledgement that Dewitt—not the John Doe driver—caused Decedent's harm precludes a negligent training/supervision claim.

*Second*, even assuming, counterfactually, that the John Doe driver—rather than Dewitt—harmed Decedent, the Objection likewise ignores Lyft's argument that a plaintiff must plead "facts . . . that [the purported employee] had a propensity to commit the tortious conduct at issue." Mot. at 8-9 (quoting *Uber*, 2023 WL 3570635, at *5). This omission is dispositive, as "[i]t is fatal to a . . . negligent supervision [claim] if the complaint contains no allegations concerning the propensity of the employee to engage in the type of conduct which caused the injury." *Uber*, 2023 WL 3570635, at *4) (citation omitted).

*Finally*, Plaintiffs also ignore Lyft's argument that their failure to name the driver—other than as John Doe—independently forecloses his negligent training and supervision theory. *See* Mot. at 9 (citing *Certain Underwriters at Lloyd's of London v. Grace Design Build, LLC*, No. FST-CV 21-6052048-S, 2022 WL 4115958, at *4 (Conn. Super. Ct. Sept. 9, 2022)).

It is telling that Plaintiffs failed to cite a single case that supports their negligent training and supervision theory, and that the only cases referenced in the Objection on this point—*Brooks v. Sweeney*, 299 Conn. 196, 207 n.12 (2010) and *Shore v. Stonington*, 187 Conn. 147, 155 (1982) (cited in Obj. at 11-12)—rejected negligent supervision claims as a matter of law. Plaintiffs' negligent training and supervision theory fails for all of these uncontested reasons.

**IV.    Plaintiffs Failed to Respond to Lyft's Arguments as to the Wrongful Death Claim.**

Plaintiffs ignored Lyft's argument that their wrongful death claim must be dismissed for the same reasons as their negligence claim. Mot. at 9-10. This constitutes abandonment. *Davis v. Globe Life & Acc. Ins. Co.*, No. 12-CV-01583, 2013 WL 5436907, at *9 (D. Conn. Sept. 27, 2013).

**CONCLUSION**

For these reasons and those set out in the Motion, the Court should grant the Motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

DATED: April 18, 2025

By /s/ *Douglas A. Balko (Ct30483)*
Jason R. Gagnon (Ct28333)
Douglas A. Balko (Ct30483)
Carmody Torrance Sandak & Hennessey LLP
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721
Tel: (203) 573-1200
Fax: (203) 575-2600
jgagnon@carmodylaw.com
dbalko@carmodylaw.com

*Counsel for Defendant Lyft, Inc., d/b/a Lyft Drives Connecticut, Inc.*


## CERTIFICATION

I hereby certify that a copy of the foregoing Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing.

Michael J. Rosnick, Esq.
MILLER, ROSNICK,
D'AMICO AUGUST &
BUTLER, P.C.
1087 Broad Street
Bridgeport, CT 06604
*Counsel for the Plaintiffs*

                              /s/ *Douglas A. Balko*
                              Douglas A. Balko

{W3669950}                    11