UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GERALD MINOGUE, *administrator of the estate of Julie Minogue*, LUKE MINOGUE, SHAUN TURNER, AND NICHOLAS TURNER,<br>    *Plaintiffs*,<br><br>v.<br><br>LYFT DRIVES CONNECTICUT, INC., AND LYFT, INC.,<br>    *Defendants*. | No. 3:25-cv-0007 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Gerald Minogue, administrator of the estate of Julie Minogue, Luke Minogue, Shaun Turner, and Nicholas Turner (collectively, "Plaintiffs'), have filed a Complaint in Connecticut state court alleging one count of wrongful death and one count of negligence against Lyft Drives Connecticut, Inc. and Lyft, Inc. ("Defendant" or "Lyft")[1]. Compl. ECF No. 1 (Jan. 3, 2025) ("Compl.").

Lyft has moved to dismiss both counts.

Plaintiffs have moved to stay adjudication of the motion to dismiss until some discovery has been propounded.

For the following reasons, the motion to dismiss is **DENIED**. As a result, the motion to stay is **DENIED as moot**.

---

[1] As noted in the Notice of Removal, "Lyft, Inc." and "Lyft Drives Connecticut, Inc." are the same corporate entity. Due to a previously registered corporation with a similar name, Lyft was initially registered as "Lyft Drives Connecticut, Inc." in the state of Connecticut. The name was changed to "Lyft, Inc." in 2023. *See* Notice of Removal ¶ 7, ECF No. 1 (Jan. 3, 2025) ("Lyft Drives Connecticut, Inc. and Lyft, Inc. are the same corporate entity. On January 10, 2018, Lyft, Inc. registered the corporate name of Lyft Drives Connecticut, Inc. in the State of Connecticut because 'Lyft Inc.' (no comma) was already a registered corporation in the State of Connecticut. . . . On June 5, 2023, Lyft Drives Connecticut, Inc. changed its name in Connecticut to Lyft, Inc.").

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Gerald Minogue is the administrator of the estate of Julie Minogue. Compl. ¶ 4. Nicholas Turner, Shaun Turner, and Luke Minogue are the sons of Ms. Minogue. *Id.* ¶ 7.

On December 6, 2022, an unnamed Lyft driver allegedly drove Ewen Dewitt to Ms. Minogue's home. *Id.* ¶ 13. During the drive to Ms. Minogue's home, Mr. Dewitt allegedly carried a "large axe" "in plain sight" and "looked and acted like he was dangerous." *Id.* ¶¶ 13, 14(a). Mr. Dewitt then allegedly broke into Ms. Minogue's home and struck her with the axe, killing her. *Id.* Luke Minogue and Shaun Turner "heard and/or witnessed, the horrific events, and saw their mother mortally wounded and dying." *Id.* ¶ 15.

The Lyft driver allegedly "allowed [Mr.] Dewitt to stop to buy liquor, and other supplies needed to carry out his heinous crime." *Id.* ¶ 14(b). The Lyft driver also allegedly failed to call for help or notify supervisors, and Lyft allegedly failed to properly train or supervise the Lyft driver. *Id.* ¶¶ 14(c)–(h).

### B. Procedural History

On January 3, 2025, Lyft removed this case to federal court. Notice of Removal, ECF No. 1 (Jan. 3, 2025).

On February 10, 2025, Lyft filed a motion to dismiss the Complaint and an accompanying memorandum in support.[2] Mot. to Dismiss, ECF No. 16 (Feb. 10, 2025); Memo. in Supp., ECF No. 16-1 (Feb. 10, 2025) ("Memo. in Supp.").

---

[2] On February 12, 2025, Lyft filed an identical motion to dismiss, potentially to account for both "Lyft, Inc." and "Lyft Drives Connecticut, Inc." being named in the Complaint, although no reason is specified in the document. *See* Mot. to Dismiss, ECF No. 17 (Jan. 12, 2025). Since the corporate entity is one and the same, and the documents are apparently identical, the Court will refer only to one motion to dismiss for the purposes of this Order and Ruling.

On March 11, 2025, Plaintiffs filed a motion to stay adjudication of the motion to dismiss until the completion of some discovery. Mot. to Stay, ECF No. 26 (Mar. 11, 2025).

On April 1, 2025, Lyft filed an objection to the motion to stay adjudication of the motion to dismiss. Obj. re Mot. to Stay, ECF No. 27 (Apr. 1, 2025).

On April 4, 2025, Plaintiffs filed an objection to the motion to dismiss. Obj. re Mot. to Dismiss, ECF No. 28 (Apr. 4, 2025) ("Obj.").

On April 18, 2025, Lyft filed a reply to the objection. Reply to Response to Mot to Dismiss, ECF No. 29 (Apr. 29, 2025) ("Reply").

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546

(2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.   DISCUSSION

"The essential elements of a cause of action in negligence are well established: breach of that duty; causation; and actual injury . . . ." *Osborn v. City of Waterbury*, 220 A.3d 1, 6 (Conn. 2019) (internal quotation marks and citations omitted). "Breach of duty" includes both "the existence of a duty" and the "scope of that duty," which is also called "the requisite standard of care." *Id.* (internal quotation marks and citations omitted).

The Connecticut wrongful death statute, Conn. Gen. Stat. § 52-555, "does not create a new cause of action, independent of any claims that the decedent might have had during his or her life. Rather, the wrongful death statute merely allows the administrator of an estate to append to an already valid claim an additional element of damages consisting of costs associated with the decedent's death." *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 294 (Conn. 2019).

Plaintiffs have brought one claim of negligence and one claim of wrongful death, predicated on their negligence claim.

Lyft argues that the negligence claim should be dismissed because it did not owe Plaintiffs a duty of care. Memo. in Supp. at 4. Specifically, Lyft argues, it had no duty to intervene absent control over Mr. Dewitt or a special relationship to Mr. Dewitt or Ms. Minogue. *Id.* at 5–6. Lyft also argues that, to the extent Plaintiffs attempt to argue a negligent training claim, it must fail because it is only available when the employee caused the injury. *Id.* at 8. Lyft also argues the wrongful death claim must fail in absence of a viable negligence claim because under Connecticut law, a wrongful death claim is only available to seek damages based on another valid theory of liability. *Id.* at 9–10.

In response, Plaintiffs argue that the harm was foreseeable and that Lyft "assumed a duty by means of their own actions, policies and procedures." Obj. at 6. Specifically, Plaintiffs argue that "carrying a large axe to a suburban condo at night, while intoxicated and acting strangely" is enough to indicate to a reasonable person that a crime was in progress, and that more than simply doing nothing, Lyft "through their assigned driver, furthered the progression of the crime by chauffeuring the murder[er] to his intended victim." *Id.* at 8. Plaintiffs also argue that the issue is fact-intensive and that factual issues "need to be investigated" for them to fully present their case. *Id.* at 11. As to negligent training, Plaintiffs argue that its is not unreasonable to expect Lyft

5

to have "guidelines, and procedures to assist its drivers when confronted with open carry weapons," a circumstance that is "foreseeable." *Id.* at 12.

In reply, Lyft argues that it did not assume the duty to protect Ms. Minogue because it did not undertake to render any services to her specifically. Reply at 4–5. Lyft also reasserts that it had no special relationship with Mr. Dewitt or Ms. Minogue. *Id.* at 6. Finally, Lyft argues that Plaintiff failed to address its arguments about the deficiencies in its negligent training or supervision theory or the wrongful death claim. *Id.* at 9–10.

The Court disagrees.

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action." *Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 263 A.3d 796, 804 (Conn. 2021) (internal citation omitted). To determine whether there is a duty of care, courts first determine "whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that a harm of the general nature of that suffered was likely to result" and then determine, "on the basis of a public policy analysis, [] whether the defendants responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." *Doe v. Saint Francis Hosp. and Medical Center*, 72 A.3d 929, 947 (Conn. 2013) (internal citations omitted). Ordinarily, under the public policy analysis, "there generally is no duty that obligates one party to aid or to protect another party." *Id.* at 948.

An exception to this rule may arise, however, "when the defendant's own conduct creates or increases the foreseeable risk that such other person will be harmed by the conduct of a third party, including the criminal conduct of that third party." *Id.*; *see also* Restatement (Second) of Torts § 302B, comment e. ("There are, however, situations in which the actor, as a reasonable

man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise . . . where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account."). "For the purposes of this exception, the actor's conduct may be negligent solely because he should have recognized that it would expose another person to an unreasonable risk of criminal aggression." *Doe v. Boy Scouts of Am. Corp.*, 147 A.3d 104, 113 (Conn. 2016) (internal citations and quotation marks omitted) (cleaned up).

There are no "definite rules" for when this exception apples; rather, "[a]s in other cases of negligence . . . it is a matter of balancing the magnitude of the risk against the utility of the actor's conduct. Factors to be considered are the known character, past conduct, and tendencies of the person whose intentional conduct causes the harm, the temptation or opportunity which the situation may afford him for such misconduct, the gravity of the harm which may result, and the possibility that some other person will assume the responsibility for preventing the conduct or the harm, together with the burden of the precautions which the actor would be required to take. Where the risk is relatively slight in comparison with the utility of the actor's conduct, he may be under no obligation to protect the other against it" *Saint Francis Hosp.*, 72 A.3d at 950 (quoting Restatement (Second) of Torts § 302B, comment f.).

In sum, whether this exception applies depends on "(1) whether the defendant's conduct gave rise to a foreseeable risk that the injured party would be harmed by the intentional misconduct of a third party; and (2) if so, whether, in light of that risk, the defendant failed to take appropriate precautions for the injured party's protection." *Id.* This inquiry "necessarily is fact intensive" and must be assessed "in light of the facts of the particular case." *Id.*

7

Assuming "all the allegations in the [C]omplaint are true", as this Court must, *Twombly*, 550 U.S. at 555, Mr. Dewitt got into a car for a Lyft ride carrying a large axe in plain view and acting aggressive and dangerous. Compl. ¶ 14. The Lyft driver then drove Mr. Dewitt to buy alcohol and "other supplies needed to carry out his heinous crime" and then dropped him off at Ms. Minogue's home. *Id.* ¶ 14(b). It could be reasonably foreseeable to the Lyft driver that picking up Mr. Dewitt and taking him to buy alcohol increased the risk that he would engage in violent acts. Thus, Lyft could be liable to Plaintiffs under a *respondeat superior* theory. *See, e.g.*, *Doe v. Lyft Drives Conn., Inc.*, No. 3:23-cv-0533 (VAB), 2024 WL 757082, at *6 (D. Conn. Feb. 23, 2024) (recognizing that a claim for vicarious liability has been stated where "Plaintiffs have sufficiently alleged that the driver was acting and operating within the scope of his agency with Lyft"); *A-G Foods, Inc. v. Pepperidge Farm, Inc.*, 579 A.2d 69, 74 (Conn. 1990) ("A servant acts within the scope of employment while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment'. . . . [A] servant may be acting within the scope of his employment when his conduct is negligent, disobedient and unfaithful . . . ." (internal citations and quotation marks omitted)). Lyft could also be liable for being directly negligent by failing to create and implement sufficient safety procedures. *Cf.*, *Stewart v. Federated Dept. Stores, Inc.*, 662 A.2d 753, 756 (Conn. 1995) (finding that department store could be negligent for murder that occurred in parking garage when it had a "practice to maintain minimal security in the garage").

Lyft's argument that it has no affirmative duty to protect someone is inapposite. It is true that Lyft would likely have no duty of care and thus could not be negligent if a Lyft driver drove past a crime taking place and did not intervene, or even if a passenger displaying no unusual behavior happened to commit a crime after being dropped off. *Cf. Fraser v. U.S.*, 674 A.2d 811,

815 (Conn. 1996) ("Existing Connecticut precedents impose only a limited duty to take action to prevent injury to a third person. Our point of departure has been that 'absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another.'"); Restatement (Second) of Torts § 315 ("There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection.").

But the circumstances in this case are different. Plaintiffs allege that the Lyft driver's own actions—*e.g.*, taking Mr. Dewitt to a liquor store and bringing someone wielding a large axe to a residential neighborhood—"increase[d] the risk of intentional misconduct by third party" in a foreseeable way, *Boy Scouts*, 147 A.3d at 120, not that Lyft merely failed to intervene in an ongoing crime. *See, e.g.*, *id.* at 117 (affirming judgment in negligence claim for failing to protect plaintiff from sexual abuse where "[t]he plaintiff presented evidence that the defendant engaged in the affirmative acts of promoting and endorsing Boy Scout activities, such as overnight camping, that created opportunities for sexual abuse").

Moreover, while duty is ultimately a "legal conclusion," its analysis in a case, like this one, is "fact intensive," and thus the exact parameters of the duty of care are better addressed after discovery. *See Saint Francis Hosp.*, 72 A.3d at 950 ("As comment (f) to § 302 B of the Restatement (Second) of Torts makes clear, the issue necessarily is fact intensive, and its resolution will depend on the nature and gravity of the risk posed by the potential misconduct of the third party, with due regard, of course, for the vulnerability of the injured party. In other words, whether the injured party in any given case can satisfy the requirements of § 302 B *even*

9

*though the defendant had no knowledge of the third party's criminal propensity* will hinge on a careful consideration of *all* of the nonexclusive factors set forth in comment (f) to § 302 B in light of the facts in the particular case."(citation omitted) (emphasis in original)). Thus, Plaintiffs have presented sufficient factual allegations to plead that Lyft owed a duty of care, at least at this time.

Accordingly, the motion to dismiss will be denied.³

## IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED**. As a result, the motion to stay is **DENIED as moot**.

**SO ORDERED** at New Haven, Connecticut, this 15th day of August, 2025.

/s/ Victor A. Bolden  
VICTOR A. BOLDEN  
UNITED STATES DISTRICT JUDGE

---

³ While the parties discuss potential independent claims of negligent supervision and negligent hiring, no such claims appear in the Complaint. As a result, the Court does not address those arguments. To the extent Plaintiffs wish to raise an independent negligent supervision or negligent hiring claim, they must file a motion for leave to amend their Complaint.